IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOSE MOSQUEDA,<br><br>　　　　Plaintiff,<br><br>　vs.<br>CAPTAIN HASH, NURSE GABBY,<br>NURSE KELLI, NURSE RYLAND,<br>and MISSOULA COUNTY,<br><br>　　　　Defendants. | CV 24-48-M-DWM<br><br><br><br>ORDER |

　　　Plaintiff Jose Mosqueda ("Mosqueda"), a former pretrial detainee the Missoula County Detention Facility ("MCDF"), commenced this pro se action. Mosqueda's amended complaint asserts Fourteenth Amendment claims against the Defendants under 42 U.S.C. §1983 for failing to provide him adequate medical care while he was at MCDF.  (Doc. 9 at 3.)

　　　The Amended Complaint names Missoula County, as well as MCDF Captain Michael Hash ("County Defendants"), as well as three nurses, Nurse Gabby, Nurse Kelli, and Nurse Ryland, employed by Wellpath, a private company contracted to provide medical services at MCDF (collectively "Wellpath Defendants").

1

The County Defendants and the Wellpath Defendants both moved to dismiss Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6). *See*, (Docs. 13-17.) Prior to briefing on the motions to dismiss was completed, this matter was stayed as a result of bankruptcy proceedings involving Wellpath in the United States Bankruptcy Court of the Southern District of Texas. (Doc. 23.) The stay was lifted as to the County Defendants on May 29, 2025, and briefing on their motion to dismiss is now complete.

As to the Wellpath Defendants, the stay remains in effect. Wellpath Defendants filed a Notice, providing developments in the bankruptcy proceedings, and attached a copy of the Confirmation Order and Stay Order entered in those proceedings. *See*, (Docs. 33, 33-1 & 33-2.) Each set of Defendants will be addressed separately.

## I.   County Defendants

### A. Factual Background/Mosqueda's Claims

The following facts are taken from Mosqueda's Amended Complaint, (*see* Docs. 9 & 9-1), and, at this stage of the proceeding, are assumed to be true and construed in the light most favorable to him, *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021).

#### i.   Medical Care

On August 18, 2023, Mosqueda was involved in an altercation at MCDF.

Shortly thereafter, he began having pain in his right wrist and thumb and both were swollen and discolored. Mosqueda was taken into a holding cell where he waited for Nurse Gabby. Mosqueda told Nurse Gabby that he had suffered a hairline fracture in the same wrist in 2020 and believed he may have broken something during the fight. Nurse Gabby told Mosqueda there was little that could be done due to the swelling, and they would have to wait for the swelling to go down before x-rays could be performed. (Doc. 9-1 at 1-2.)

    Mosqueda submitted medical kites. He was seen by Nurse Ryland and was given Tylenol and an ice pack daily over a five-day period. (*Id*. at 2.) Mosqueda then was scheduled for x-rays with a technician with Big Sky Mobile Imaging and Radiology. Mosqueda was advised he would receive the results in the coming days and was given Tylenol for the next two weeks. (*Id*. at 3.) Nurse Kelly sent Mosqueda a kite advising him that he did not appear to have any broken bones. Nevertheless, Mosqueda continued to experience pain and discomfort.

    Mosqueda submitted several medical kites requesting treatment, as the discoloration and swelling continued. Mosqueda was examined by Nurse Ryland, who advised Mosqueda that she believed he had suffered a bruised nerve. Mosqueda told Nurse Ryland that he believed something was broken as he was experiencing pain and discomfort and was having difficulty completing everyday tasks. He was again prescribed Tylenol for a two-week period. (*Id*. at 3-4.) Six

3

weeks after the incident, the swelling and pain persisted.

Mosqueda was then seen by Nurse Kelly Klauber for an examination. On October 13, 2023, he was given a wrist brace, which he wore for 6 weeks. Nurse Klauber told Mosqueda to try and exercise and stretch his hand for mobility. (*Id.* at 4-5.) Mosqueda attempted to comply, but the pain continued.

In January of 2024, Mosqueda advised Nurse Klauber of the ongoing pain; Nurse Klauber instructed Mosqueda that if the discomfort continued he should submit a medical kite. He was again instructed to try and exercise the injury and that it was okay to put weight on it. (*Id.*)

Mosqueda did as he was advised, but the injury did not improve. (*Id.* at 6.) Mosqueda was again seen by Nurse Ryland, and he told her his hand still did not feel right. He was instructed not to put weight on his hand and that an appointment would be scheduled with Nurse Kelli. (*Id.*)

Mosqueda was examined by Nurse Kelli, and she assessed his wrist mobility. Mosqueda was advised that an appointment would be scheduled with Dr. Puckett from Missoula Bone and Joint Clinic. (*Id.* at 7-8.) Prior to the appointment, additional x-rays were performed. Two weeks later, Nurse Kelli notified Mosqueda that he did, in fact, have a broken bone in his wrist and he should try not to put any weight on it. On January 8, 2024, Mosqueda was taken to the appointment with Dr. Puckett who confirmed there was a broken bone and that

Mosqueda would be placed in a hard cast for two months. (*Id*. at 8-9.) Within a week of being put into the cast, Mosqueda submitted additional medical kites due to the nerve pain he was experiencing. Dr. Puckett subsequently advised Mosqueda he may need to have surgery to correct the broken wrist in the event that it healed incorrectly.

On March 13, 2024, the cast was removed, but the nerve pain remained. Mosqueda continued to suffer from pain and discomfort. He submitted medical kites requesting a date be set for the revision surgery. (*Id*. at 11.) Mosqueda was transferred from MCDF before any surgery occurred.

   ii.   **Mosqueda's Claims**

Based upon this background, Mosqueda claims that Captain Hash, as the policy maker and supervisor of MCDF, failed to adequately train and supervise the medical staff and correctional officers, which resulted in the deprivation of his rights and reckless negligence, causing his pain and discomfort. Mosqueda asserts properly trained correctional officers and staff could have observed and responded to Mosqueda's injuries and determined a difference course of treatment was necessary. The lack of proper policy to protect Mosqueda and the repeated mistakes amounted to deliberate indifference. (*Id*. at 13-14.)

Mosqueda asserts the responsibility of providing proper medical care and medical providers falls upon Missoula County and there was a duty to make sure

5

that the facility staff and correctional officers had proper and adequate training. The failure to provide such personnel constitutes a Fourteenth Amendment violation and indifference to Mosqueda's pain. The medical treatment entrusted by the County to Captain Hash and Wellpath was unreasonable, according to Mosqueda. (*Id*. at 18-24.)

### B. Analysis

The County Defendants move to dismiss the claims against them based upon Mosqueda's failure to state a claim. County Defendants also assert qualified immunity on behalf of Captain Hash and claim that Mosqueda failed to exhaust his claims.

#### i. Exhaustion

The Prison Litigation Reform Act ("PLRA") prohibits any prisoner from suing over prison conditions until he has first exhausted available administrative remedies by completing a correctional facility's administrative review process according to its rules. *See* 42 U.S.C. § 1997e(a).

In the Amended Complaint Mosqueda acknowledged that he did not complete the requisite grievance procedure and exhaustion of his claims because the staff would "cause problems" if the process was used. (Doc. 9 at 6.) Mosqueda attached some of the grievances he filed at MCDF, along with one grievance appeal. *See*, (Doc. 9-2.) Despite not properly exhausting his claims,

6

Mosqueda notes that he did notify all of the correctional officers and medical staff about his pain, and he made it a point to show them his swollen wrist. *See*, (Doc. 21 at 16.) Mosqueda was told correctional officers were not doctors and not qualified to diagnose his injury. (*Id*.) Mosqueda also suggests that MCDF staff knew he was unable to use his right hand due to the injury and that the exhaustion requirement should be excused. (*Id*. at 15-16.)

While the Court appreciates Mosqueda was experiencing hand and wrist pain during this period, the record indicates that he was repeatedly able to file medical kits. *See e.g.*, (*Id*. at 6, 8, 11-12, 15-16); *see also*, (Doc. 9-2.) Also, Mosqueda was able to file several grievances, he just failed to complete the administrative process. There is no allegation or indication that Mosqueda did not understand the grievance policy or procedure at MCDF, only that he failed to properly utilize it. Accordingly, by his own admission, Mosqueda failed to exhaust his pending claims against the County under MCDF's administrative grievance procedure. Thus, his claims against the County are not properly before the Court. Even if they were, however, they lack merit as discussed below.

### ii.    Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citation

omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court ordinarily must construe a *pro se* litigant's pleading liberally and hold a *pro se* plaintiff "to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(citation omitted).

    The Court must accept as true all non-conclusory factual allegations contained in the complaint and must construe the complaint in the light most favorable to the plaintiff. *Zucco Partners, LLC v. Digimarc Corp*., 552 F. 3d 981, 989 (9th Cir. 2009). "Generally, a court may not consider material beyond the complaint in ruling on a Fed. F. Civ. P. 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Group, Inc*., 499 F. 3d 1048, 1052 (9th Cir. 2007)(citation omitted). The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F. 3d 1202, 1212 (9th Cir. 2012)(citation omitted); *Schneider v. Cal. Dep't of Corr*., 151 F. 3d 1194, 1197 n.1 (9th Cir. 1988)("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")(citations omitted; emphasis in the original). The court may also consider documents referenced in the complaint under the incorporation by

reference doctrine when the authenticity of the subject document is uncontested, and the complaint extensively relies upon the subject document. *See Knievel v. ESPN*, 393 F. 3d 1068, 1076 (9th Cir. 2005).

### Denial of Medical Care

In response to Mosqueda's claims, County Defendants assert that Mosqueda fails to state a claim against Captain Hash or Missoula County.

Pursuant to the Fourteenth Amendment, prison officials have a duty to provide pretrial detainees with adequate medical care. *See Gordon v. County of Orange*, 888 F. 3d 1118, 1124-25 (9th Cir. 2018). To state a plausible claim under the Fourteenth Amendment, a pretrial detainee must allege facts showing that:

> (i) the defendant made an intentional decision regarding the denial of needed medical care; (ii) the denial of needed medical care put plaintiff at a substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable official under the circumstances would have understood the high degree of risk involved- making the consequences of Defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval v. Cty. Of San Diego,* 985 F. 3d 657, 669 (9th Cir. 2021). To satisfy the third element, the plaintiff must show that the defendant's actions were "objectively unreasonable," which requires a showing of "more than negligence but less than subjective intent- something akin to reckless disregard." *Id*. (*quoting Gordon*, 888 F. 3d at 1125). "There mere lack of due care by a state official does

not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Gordon*, 888 F. 3d at 1125 (citations omitted).

Relative to Captain Hash, Defendants assert that he did not participate in Mosqueda's medical treatment. Captain Hash was named as a supervisor in his official capacity. *See*, Amd. Comp. (Doc. 9 at 2.) But Defendants argues Mosqueda's allegations are wholly conclusory and that he failed to allege any personal participation or knowing acquiescence to a constitutional violation on the part of Captain Hash. (Doc. 13-1 at 6)(*citing* Doc. 9-1 at 13-14.) Specifically, Defendants state that Captain Hash did not participate in any of Mosqueda's treatment decisions and Mosqueda did not allege that Hash was aware of his injuries. Defendants argue that the claims advanced are more akin to *respondeat superior* allegations and should be dismissed pursuant to *Monell v. Dept. of Social Services of New York*, 436 U.S. 658 (1978), and its progeny. (Doc. 13-1 at 6-7.)

County Defendants are correct. Section 1983 will not impose liability on supervising officers under a *respondeat superior* theory of liability. *Monell,* 436 U.S. at 691- 94. That is, a defendant cannot be held liable just because they supervise other employees. Instead, supervising officers can be held liable under Section 1983 "only if they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987)(overruled on other grounds by *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012)). "A

10

defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *see also Henry A. v. Willden*, 678 F.3d 991, 1003 04 (9th Cir. 2012).

To impose liability under Section 1983 against a supervisor, a plaintiff must establish that the supervisor's prior knowledge of unconstitutional conduct committed by subordinates that that would give the supervisor notice of the need for changes. *Howell v. Earl*, 2014 WL 2594235 (D. Mont. 2014) (*citing Starr*, 652 F.3d at 1208; *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011)); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), *Watkins v. City of Oakland*, 145 F.3d 1087, 1093-94 (9th Cir. 1997), and *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007). But Mosqueda has made no allegation that Hash was involved in any delay or denial of medical care or that wrongful acts on Hash's part led to the purported denial of care. Moreover, there is no indication that Hash knew of any unconstitutional conduct being committed by any of his subordinates.

A supervisor may also be liable if there is evidence of "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435,

11

1446 (9th Cir. 1991) (en banc), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).  It is insufficient for a plaintiff only to allege that supervisors knew about a constitutional violation and that they generally created policies and procedures that led to the violation, without alleging "a specific policy" or "a specific event" implemented or instigated by them that led to the constitutional violations.  *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (emphasis in original).  But Mosqueda has not identified a specific policy, or an event instigated by Hash.  In fact, Mosqueda complained in the addendum to his amended complaint that one of the central issues he experienced was that there was no policy in place to provide uniform medical treatment at MCDF.  *See*, (Doc. 9-1 at 13-14.) Thus, he fails to state a claim under this theory of supervisory liability.

Moreover, because there is no identifiable policy, Mosqueda cannot plausibly plead a constitutional injury resulted from Missoula County's policies.  The County Defendants are correct that Mosqueda's failure to identify a custom or policy of MCDF, which was objectively unreasonable or recklessly disregarded his wellbeing is fatal to his claim.  Because he does not identify *any* policy there cannot be a policy which was the driving force in his alleged injury.  *See*, (Doc. 13-1 at 10.)  Mosqueda's bald and conclusory allegations are insufficient.

The Court agrees with the County Defendants that Mosqueda's complaint shows that there was a system in place, whereby the County contracted with

Wellpath and outside medical providers, to review and respond to Mosqueda's needs. As set forth above, he was seen and examined by the Wellpath nurses various times during which he was provided pain relief medication, ice, and a splint; Mosqueda received x-rays from outside providers on two separate occasions; and he was brought to see an outside specialist, Dr. Puckett, who placed him in a cast. Also, discussions were had with Dr. Puckett regarding a possible revision surgery, but Mosqueda was transferred from MCDF prior to a surgery being scheduled. While Mosqueda may have disagreed with the outcome and/or the course of treatment he received, this does not demonstrate that the County recklessly disregarded his care.

Mosqueda has not plausibly pled a viable Fourteenth Amendment violation; the County Defendants' motion to dismiss will be granted. Because the County Defendants did not violate Mosqueda's constitutional rights, the Court need not and does not consider whether the defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (explaining that if the defendant's conduct did not violate a constitutional right, further analysis is unnecessary).

## II. Wellpath Defendants

Relative to the Wellpath Defendants, Mosqueda alleges Nurse Gabby, Nurse Kelli, and Nurse Ryland intentionally failed to provide him with sufficient medical treatment while he was incarcerated at MCDF, which put him at a substantial risk

13

of serious harm. *See e.g.*, (Doc. 9 at 12-13, 14-18.) On August 23, 2024, Wellpath Defendants filed their motion to dismiss and brief in support. (Docs. 14 & 15.)

As set forth above, Wellpath Defendants' then filed a Suggestion of Bankruptcy advising the Court that on November 19, 2024, Wellpath LLC, had filed a Voluntary Petition for Non-Individuals Filing Bankruptcy for Relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (Houston Division)(the "Bankruptcy Court"). *See*, (Doc. 22.) On November 20, 2024, the Court entered an order staying the matter as to all parties. (Doc. 23.)

On May 29, 2025, the Court took judicial notice that the automatic stay in the Bankruptcy Court that was applicable to Wellpath entities expired on May 9, 2025, and the stay applicable to non-debtor defendants expired on May 7, 2025. (Doc. 31.) An Order was entered leaving the stay in place relative to the Wellpath Defendants but directed them to provide an update regarding the status of the continued bankruptcy proceedings. (*Id*.) On June 27, 2025, Wellpath filed a Notice. (Doc. 33.) Attached to the Notice were a copy of the 5/1/25 Confirmation Order and the 6/4/25 Stay Order entered by the Bankruptcy Court. (Docs. 33-1 & 33-2.) Wellpath advised that pursuant to Article IX.A of the Plan and Paragraph 3 of the Stay order, all claims and causes of action against debtors are discharged as a result of the plan becoming effective. (Doc. 33 at 3.)

14

Under Article IX.F of the Plan, holders of claims and causes of action that are discharged or released are permanently enjoined from: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; … and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan; provided, that, for the avoidance of doubt, this Article IX.F shall not apply to parties that timely opt out of the Third-Party Release to preserve their claims against the Released Parties. (*Id*. at 4.) Wellpath Defendants also noted, pursuant to the Stay Order, holders of claims or interests that affirmatively elected to opt out of the Plan's Third-Party Release may bring or continue to pursue claims against the Non-Debtor Defendants, including employees of the Debtors or employees of the Post Restructuring Debtors. (Doc. 33 at 5)(*citing* Stay Order, ¶5; Plan, Article IX.F). Thus, the documents filed by Wellpath Defendants indicate that he nurse defendants named in this matter are employed by Debtor Wellpath and the Plan deals with claims against the Debtor and Debtor's employees.

The Court notes that Paragraph 43 of the Confirmation Order provides that "Reorganized Wellpath shall provide notice to all known personal injury …claimants of the extended 90-day period to opt out from the Third-Party Release

15

in Article IXD and file a certificate of service with the Bankruptcy Court. (Doc. 33-1 at 53.) The Court has independently reviewed the docket for the Bankruptcy Court for the Southern District of Texas, Houston Division. *See Tigueros v. Adams*, 658 F. 3d 983, 987 (9th Cir. 2011)(court may take judicial notice of proceedings in other courts, within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue). It does not appear that Mosqueda timely filed to opt out of the third-party releases contained in the Plan. Pursuant to the Plan, a claim against the Debtor and Debtor's employees is discharged unless the Plaintiff elected to opt-out of the third-party releases. *See e.g.*, (Doc. 33-1 ¶¶175 & 177)(defining "Related Party" and "Released Parties").

Accordingly, Mosqueda as the holder of a general unsecured claim must go through the Bankruptcy Court and the Plan, specifically the Liquidating Trust, to determine what amount of distribution, if any, he is entitled to. The Bankruptcy Court has exclusive jurisdiction over the Plan and all matters related to it. The Wellpath Defendants will be dismissed from this action.

Based on the foregoing, IT IS ORDERED:

1. County Defendants' motion to dismiss (Doc. 13) is GRANTED in full. County Defendants are DISMISSED from this action.

2. The remaining Defendants, Nurse Gabby, Nurse Kelli, and Nurse

Ryland are DISMISSED from this matter. Mosqueda must pursue claims against these Defendants pursuant to the terms outlined in the Chapter 11 Plan and Trust Distribution Procedures in the Bankruptcy Court.

    3. Wellpath's motion to dismiss for failure to state a claim (Doc. 14) is DENIED as moot.

    DATED this 27th day of August, 2025.

_____
Donald W. Molloy, District Judge
United States District Court